RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s conclusion that Mr. Rosebrock’s First Amendment claim for injunctive relief has been rendered moot by an e-mail “instructing” the Veteran Affairs Greater Los An-geles Healthcare System [VAGLA] police “to consistently enforce” the regulation governing posting of materials. Majority Opinion, p. 966.
As the majority opinion acknowledges, voluntary cessation of challenged conduct renders a case moot only if the party asserting mootness meets the “heavy burden” of establishing that “subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” Majority Opinion, p. 971 (quoting Friends of the Earth Inc. v. Laidlaw Envtl. Servs., Inc., *975 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610) (emphasis added).
The majority opinion also concedes that when the government asserts mootness as a result of a change in policy, it is unlikely to prevail if the “government is otherwise unconstrained should it later desire to reenact the [offending] provision,” or more accurately in this case, later desire to permit discriminatory enforcement. Majority Opinion, p. 971 (quoting Coral Constr. Co. v. King Cnty., 941 F.2d 910, 928 (9th Cir.1991)) (alterations omitted). Indeed, the majority and I agree that a determination of mootness is inappropriate if a newly adopted policy “could be easily abandoned or altered in the future.” Majority Opinion, p. 972 (quoting Bell v. City of Boise, 709 F.3d 890, 901 (9th Cir.2013)). But we part company in our respective applications of these agreed upon principles. The majority is of the view that the Department of Veteran Affairs (VA) met its “heavy burden” and I am of the view that it did not.
From where I sit, the history of this case aligns more closely with Bell than it does with White v. Lee, 227 F.3d 1214 (9th Cir.2000), the case most heavily relied upon by the majority for its substantive analysis. See Majority Opinion, pp. 973-74. In White, we concluded that federal officials from the Department of Housing and Urban Development (HUD) had met their “heavy burden” of establishing mootness due to a “permanent change” by HUD in the way investigations are conducted. White, 227 F.3d at 1244.
The plaintiffs in White brought an action against HUD officials, alleging that they were harassed and investigated solely because they exercised their rights under the First Amendment to protest against the conversion of a hotel into housing for homeless persons. See id. at 1220-21, 1225. As a direct result of the lawsuit filed by the Plaintiffs, the Assistant Secretary of HUD for Fair Housing and Equal Opportunity issued a memorandum entitled “Substantive and Procedural Limitations on Filing and Investigating Fair Housing Act Complaints That May Implicate the First Amendment.” Id. at 1242. The memorandum was accompanied by a press release explaining that the plaintiffs’ activities were protected by the First Amendment and that the guidelines set forth in the memorandum were developed in response to plaintiffs’ protected activities. See id. Importantly, the memorandum trumpeted the supremacy of First Amendment rights, stating that “where [Fair Housing Act] concerns intersect with First Amendment protections, HUD officials must defer to the latter: the Department chooses to err on the side of the First Amendment.” Id. at 1243 (internal quotation marks omitted). We concluded that this public, detailed, contrite and emphatic renunciation of its past policy represented “a permanent change” by HUD that mooted the plaintiffs request for in-junctive relief. Id. at 1243.
The facts of the case we decide today are closer to those we considered in Bell. Bell involved a city ordinance that criminalized sleeping in a public or private structure or motor vehicle, without the permission of the owner. See 709 F.3d at 893. Plaintiffs filed an action pursuant to 42 U.S.C. § 1983 asserting that the ordinance “ha[d] the effect of criminalizing homelessness and constitutes cruel and unusual punishment ...” Id. (internal quotation marks omitted). The district court determined that Plaintiffs’ claims for prospective injunctive relief were mooted due to the issuance of a Special Order by the Chief of Police that prohibited enforcement of the ordinance “when a person is on public property and there is no available overnight shelter....” Id. at 895.
*976 We contrasted the Special Order in Bell with.the “entrenched and permanent policy issued in White....” Id. at 900 (citation omitted). We noted that the new policy in White “was designed to protect the First Amendment rights of parties subject to HUD investigations ...” Id. “[T]he new policy ... was fully supportive of First Amendment rights, addressed all of the objectionable measures that HUD officials took against the plaintiffs, and ... confessed that plaintiffs’ case was the catalyst for the agency’s adoption of the new policy....” Id. (quoting White, 227 F.3d at 1243 & n. 25) (alterations and internal quotation marks omitted).
We distinguished the Special Order at issue in Bell, concluding that the Special Order “lack[ed] the assurances present in White.” Id. We noted the significance of the new policy in White “addressing] all of the objectionable measures that HUD officials took against the plaintiffs.” Id. (citation and internal quotation marks omitted) (emphasis in the original). “In contrast, the Special Order fail[ed] to fully address Plaintiffs’ allegations ... Moreover, ... the authority to establish policy ... [was] vested entirely in the Chief of Police, such that the new policy regarding enforcement of the Ordinances could be easily abandoned or altered in the future.” Id. at 900-01. We concluded: “Simply put, Defendants have failed to establish with the clarity present in White that the new policy is the kind of permanent change that proves voluntary cessation.” Id. at 901.
The change in policy upon which the majority opinion relies is an e-mail from the associate director of VAGLA. See Majority Opinion, p. 969. As noted in the majority opinion, the e-mail directed the VAGLA police to “ensure that VA Regulation 38 C.F.R. 1.218 is enforced precisely and consistently.” Id., p. 969.[1]
As a preliminary matter, it could be convincingly argued that 38 C.F.R. 1.218(a)(9) does not even apply to Mr. Ro-sebrock’s act of hanging the American flag. This portion of the regulation is directed by title toward the distribution of handbills, and its content prohibits distributing handbills and similar items such as pamphlets, flyers, and placards, all of which are written materials. See, e.g., Webster’s Ninth New Collegiate Dictionary 550, 849 (1984) (describing a handbill as “a small printed sheet” and a pamphlet as “an unbound printed publication”) (emphases added).
It is an elementary principle of legislative interpretation that words of a feather flock together. See In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 734 n. 13 (9th Cir.2013) (“Noscitur a sociis means that a word is known by the company it keeps ...” (citation and internal quotation marks omitted)); see also United States v. Kimsey, 668 F.3d 691, 701 (9th Cir.2012) (holding that statutory terms “grouped in a list should be given related meaning” and “[t]hat several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well”) (citations omitted). One would be hard pressed to group “flag” with the other words included in the regulation provision. In fact, these words could readily be *977 adapted to an elementary school vocabulary exercise:
flyer handbill flag pamphlet Which of these words does not belong?
This exercise underscores the likely inapplicability of the regulation provision to Mr. Rosebrock’s conduct, especially when one considers that he was not actually distributing anything. And if the provision did not apply to Mr. Rosebrock’s activities, the violation of this Vietnam Veteran’s First Amendment rights would be even more egregious, and could not be mooted by an e-mail “ensuring” enforcement of an inapplicable regulation provision.
Even if the provision did apply to Mr. Rosebrock’s activities, his claim for injunc-tive relief was not mooted by the referenced e-mail. In White, we relied on the fact that the formal memorandum (not email) changing the policy was issued by the Assistant Secretary for the Department of Housing and Urban Development. See White, 227 F.3d at 1242. In this case, the e-mail (not formal memorandum) was authored by a local associate director. In White, the policy change protected First Amendment rights. See id. at 1243. Here, the e-mail prohibited all expressive activity. In White, the change in policy was publicized in the media, with positive remarks about the importance of First Amendment rights. See id. The e-mail in this case took great pains to squelch the exercise of First Amendment activity and was distributed only to the VAGLA police.
Like the Special Order in Bell, the email in this case “lacks the assurances present in White.” Bell, 709 F.3d at 900. The e-mail was not protective of First Amendment rights, did not address the objectionable actions described in Mr. Ro-sebrock’s claim for injunctive relief, and was not publicly disseminated in such a way as to bind VAGLA in the future. See id. As in Bell, “Defendants have failed to establish with the clarity present in White that the new policy is the kind of permanent change that proves voluntary cessation” sufficient to moot Mr. Rosebrock’s claim for injunctive relief. Id. at 901.
It is beyond dispute that this Vietnam-era veteran has earned the right to exercise the full panoply of First Amendment protections available in this country. We should not whisk away those rights with the flick of a pen. I respectfully dissent.

. 38 C.F.R. § 1.218(a)(9) provides in pertinent part:
Distribution of handbills. The distributing of materials such as pamphlets, handbills, and/or flyers, and the displaying of placards or posting of materials on bulletin boards or elsewhere on property is prohibited, except as authorized by the head of the facility or designee.
(Emphasis Added).
This is the provision that was enforced against Mr. Rosebrock.